Case 13-2117 Chrysler Group LLC v. Fox Hills Motor Sales Inc. et al. Case 13-2118 Chrysler Group LLC v. Fox Hills Motor Sales Inc. and Case 13-2119 Chrysler Group LLC v. Spitzer Autoworld Akron LLC Oral argument, ten minutes for each of the appellants. Twenty minutes for Appley Chrysler Group LLC and ten minutes to be shared by Appley, Spitzer, and USA. Mr. Smith for appellant. Good morning and may it please the Court. I'm Michael F. Smith on behalf of Appellants Village, Chrysler, Jeep, Fox Hills Motor Sales, and Jim Marsh American Corp. The appellants in 13-2117. When Congress enacted Section 747 of the 2010 Consolidated Appropriations Act, what it was doing was giving dealers who had been terminated in the GM and Chrysler bankruptcies a chance, giving them a chance to be added to the dealer network. It wasn't giving them a guarantee, but it also wasn't giving them an illusory promise, but a chance to go to arbitration, make the showings that Congress had set forth in the statute, and prove to the arbitrator that it should, in fact, be added to the dealer network of the manufacturer whose predecessor had terminated it. The District Court's analysis effectively deprives them of that chance because it disregards the text and structure of Section 747, thereby reaching an erroneous conclusion as to what the remedy is under the statute. As a result of that constricted view of the remedy, it failed in its preemption analysis to recognize that application of state dealer franchise laws frustrates Congress's purpose, and thereby those state laws are preempted. I want to just focus on this remedy issue because I think it's really the key to where the District Court's analysis erred in this case. It's important to look at this statute in its entirety. It's not a lengthy statute. I know the Court has read it. Subsection D is really the substantive heart of this statute, and it lays forth what Congress was intending to provide dealers who prevailed at arbitration. It set forth three different economic interests that the arbitrator was to consider. Those of the covered manufacturer, those of the covered dealer, and those of the public at large. It laid out various factors that the arbitrator was to consider, among others, and then it specified that the arbitrator, quote, shall decide based on that balancing whether or not the covered dealership should be added to the dealer network of the covered manufacturer. That's the heart of this statute. That's what Congress directed the arbitrator.  I'm sorry, Your Honor? What's the language that's said? Which sentence is that? It's in subsection D. It begins, the arbitrator shall balance the economic interest of the covered dealership, the economic interest of the covered manufacturer, and the economic interest of the public at large, and shall decide based on that balancing whether or not the covered dealership should be added to the dealer network of the covered manufacturer. And I'll add that the shall be added language also is present in subsection D, or excuse me, subsection B. But the heart of the statute is... But how do you reconcile that with subsection E that provides that the covered manufacturers shall, as soon as practicable, after the arbitrator's determination, which is what you referenced in D, provide the dealer with a customary and usual letter of intent to enter into a sales and service agreement? I mean, to enter indicates something in the future is going to happen, as opposed to the arbitrator's decision is final and conclusive, and the dealer, therefore, is within the network. I mean, that's kind of your argument. But how do you reconcile the two provisions then? Well, Judge Griffin, I think the Quality Jeep Chrysler case, which is a case we cited in our brief, it's a district court of New Mexico case from 2011, exactly reconciled it. It said the substantive remedy is subsection D's being added to the dealer network, and subsection E's letter of intent is merely the means by which it gets carried out. It's the means by which that remedy gets effectuated. Well, I mean, if it's to enter into an agreement, obviously they haven't become part of the network yet, and there's something to work out, that's all. It doesn't seem like it's final, the arbitrator's decision's final. It's something else has to come to an agreement between the manufacturer and the dealer. Well, you're right. It's not the final step, Judge Griffin, but there's really no dispute in this case that once a letter of intent is issued and the dealer signs it, as Mr. Tangeman testified, absolutely that leads to a sales and service agreement. Now, the problem here is that the absolutely is qualified if you allow state dealer franchise laws to step in and give the competing dealers a say or an objection to that. Do they have a veto, though? I would call it a qualified veto, Your Honor. What they have is the ability to force the dealer to enter into a second parallel, really repeat litigation of what the arbitrator decided. Pardon me, you're moving into the preemption argument now. I think you're confusing arguments here. I just want to be clear. I know that they're related, but I want to be clear. You've asked a question which I gather is taking you into the preemption argument. Is that right? I'm in the right part of the argument? Yeah, I think so. One leads necessarily to the other, Judge. I wonder about that. I'm still looking at the remedy here. The argument is the remedy is that you are entitled to a letter of intent that is usual and customary and not that the remedy at the end of the arbitration is real statement at that time. That's not the remedy. The remedy is the letter of intent. I mean, that's the first issue here. Correct. And as you articulated, Judge, that's the district court's position and that's Chrysler's position. Okay. Tell me why that's wrong. Why isn't the letter of intent the remedy? The letter of intent is the means by which the remedy is enforced because the dealers have a mechanism by which when a dealer has met its criteria for obtaining a dealership, a letter of intent is issued. We intend to enter into a sales and service agreement with you provided you meet these conditions and that they contain things like square footage and signage and lots of different things. What if they can't agree on the conditions in the letter of intent? I mean, your first argument is they're automatically reinstated by the arbitrator's decision. Well, the letter of intent assumes that there are terms and conditions that have to be negotiated. Well, and in the case of my three dealers, Judge, it's undisputed that they can meet all those conditions. And, in fact, one of them, Jim Marsh, has signed his letter. The legal issue is whether it's done at the time of the arbitration or whether the remedy is the letter of intent and there's further negotiations going on. Correct. In our view of the statute, the statute is simply Congress's reasonable means of telling the parties in subsection E, once you've arbitrated, the arbitrator has decided. And, by the way, the arbitrator in each of these three instances used that language. They shall be added to the dealership. Counsel, I want to assume, I know you're out of time, and maybe your co-counsel will raise this and I can ask that counsel, but I'm curious about assuming that the letter of intent is the remedy, which is not your position. You still have a preemption argument, is that correct? We do. You say they're related. If you lose the one, you lose the other, or if you lose one, you still can win on the other. We do, Your Honor. We maintain that, regardless, in the specific situation of my three dealers, the Federal Act preempts Michigan's and Nevada's dealers. Are you hanging your hat on express preemption, field preemption, or conflict preemption for all three? Implied preemption. Implied, Your Honor. Okay. The state law stands as an absolute obstacle to the operation of what Congress intended to give these dealers in Section 747. And is that the thrust of what your co-counsel is going to argue, or is this the only chance we have to hear that argument? I will defer to my co-counsel on that, Your Honor. All right, fine. Thank you. Thank you. Thank you. Robert Davis on behalf of Livonia Chrysler. Assuming that the LOI is the deliverer of the remedy, cued from your conversation with co-counsel. I'm not saying we'll decide that. I just want to hear the other issue without rehashing the first issue. But the LOI should not be allowed to undermine the results of the arbitration, and that's my argument. It should not? It should not. It sounds like a public policy argument. I mean, if that's the decision, the judgment of Congress, we enforce it whether it should be or not, shouldn't we? Well, the arbitration was final without appeal. In my case, in my case, I've given you in my brief four findings that were made at arbitration that made my arbitration specific to my client's site. So when my client went to arbitration, my client continued to own the site that was terminated. My client's in the courtroom still owns the site. There's a finding in the arbitration that my client should be returned to that site, and I've given you the quotes. Claimant's economic interests are met by being able to utilize its land and building, which are presently dormant. This is the finding of the arbitrator. And to reestablish its business there in a strategic, fiscally responsible manner, and to go on and be viable and profitable. So I'm going to agree. I'll agree. Let's say I agree with you that the LOI is the delivery of remedy. We're not in that position. We're just asking the question. What I'm saying is that I want my LOI to be absent the first three paragraphs that's in what they say is the usual and customary LOI that say, we get to decide if your site is correct. I arbitrated and won my site. And here's the issue on that, is that what they're essentially getting them is a right to appeal the arbitration, which is not their right. On the issue of preemption, I believe it's conflict preemption that I've argued in my brief. If you take what was arbitrated at the federal level and you take what Michigan has as a dealer challenge, in their letter of intent, they indicate in the letter of intent, by the way, we're going to throw this out there and allow other people to challenge you. That gives a second bite at the same factors. It's the same factors that were already arbitrated. The federal statute doesn't consider the interests of the other dealers, does it? If you take a look at the parallel that I presented in my brief, when you compare the State Dealer Act in Michigan to the 747 criteria of arbitration, you'll find that five are nearly identical and two aren't very far away from being identical. That answers his question. But that's a big difference. So, I mean, the federal statute considers factors that does not include the interests of the other dealers that Michigan does. It includes the economic interest of the community as a whole. Okay. And the business as a whole. That's not interest of the other dealers, though, right? Not necessarily. Not necessarily. Okay. So it is a different interest. It doesn't necessarily defeat your conflict preemption argument. No, I don't think it does. Because Congress, I think, decided what interests should be considered and lists them. Michigan decides what interests should be considered and lists them. But if the two conflict, if the federal statute can't proceed with the Michigan statute there, then it may have conflict preemption. But, I mean, Michigan evaluates the public policy a little differently than the federal government. That's all. Akin to that, if we stay with the concept, not binding, that the LOI delivers the remedy, and the remedy is to be added into the dealer network in your prior geographical area with your brands that you have. That's what the law says. It's possible, Judge, that in that geographical area, there is no location that will not be subject to a state challenge, where, again, you are forced to prove why you should be there. So it's complete conflict. But when you talk about conflict, it's normally, in my understanding, which is fuzzy, is that in conflict preemption, the parties can't, one statute says do one thing, and the other statute says do another thing, and you can't do both things. But here, arguably, you have to meet these six standards under the federal statute, and you have to meet these, some standards that are the same and some that are additional under the state statute, and you have to meet all of them in order to be compliant with both the state and federal law. You could say that sort of puts an extra burden, but it's not conflict preemption, is it? Because there's no, you could comply with both of them. You could, but the state law. One of the people in one of the briefs says that they not only can, but they will, and they're eager to do so. Your Honor, in my case, I want to make sure that I'm expressing what I'm asking you to do, is I simply want an LOI, as you've defined as the mechanism to deliver the relief, that frees me from Chrysler's discretion to not approve my site, coupled with a ruling, coupled with a ruling on preemption, and that's all my client needs to get. So you're not arguing that we should rule that there's no proceeding under the state statutes that should proceed, or you are arguing that, because that's what Chrysler originally brought this claim as a declaratory judgment to see whether they had to provide notice to these procedures and participate in these procedures, or whether they could just say these procedures are no longer applicable. I'm arguing. You're saying that they're just totally not applicable. That's correct. That's a little bit different from what you just said, though. Well, no, given this federal scheme. That's not writing something into the LOI. That's having this court say those procedures are off the board. I'm asking for two things. It wouldn't matter what was in the LOI if that were the case, right, on that issue. I'm asking for two things, and I'm sorry if they weren't distinguished. Number one, Tangeman testified at trial that there are LOI templates. I understand that argument. I'm trying to get at the preemption argument. I want that template as my site. And then I want a ruling that, because I prevailed in arbitration under this federal law, that when I get reinserted back to my location, I should be free of state law challenges. That's the argument I'm trying to get an argument on, but there seems to be a lot of slivage to the other arguments, which is understandable. But on that argument, that's conflict preemption? I'm having trouble seeing that that's conflict preemption without slipping into your other argument. State law is an obstacle to the implementation of the federal resolve, Judge. Is that conflict? Is it field preemption? Has Congress preempted the field by comprehensively moving and regulating this field? No, I do not think so, Judge. I think in this case Congress took a certain body of people who were going to have certain rights, and it was going to result in them being reinstated back to their dealerships, and the state law should not frustrate or be an obstacle to that. I know you're out of time, but I've got a question about the letter of intent issued and what sort of deference we ought to give to Judge Cox's findings of fact that he made following the bench trial. Normally we review findings of fact under a clearly erroneous standard, and Judge Cox found that the letter of intent issued to your client was usual and customary. Why should we not review that ruling under a clearly erroneous standard, even if you say that he should have ruled the other way? That is your standard of review, Judge. I'm not challenging it. Why is it clearly erroneous? It's clearly erroneous because of this. If you take in my brief four factors that were ruled in my arbitration award, my arbitration award, they're site-specific and I've highlighted them in my brief. I've only read you one. I won the right to go to my site. Tangaman testified there's a template for that LOI. That LOI would be the template of pre-approved site. We do issue those. We've issued them 16 times, and we negotiated with other folks in the Spitzer case and gave them a site-specific LOI. That's what I want because otherwise my arbitration award, all the findings in my arbitration award that relate to my site are now at their discretion under their version of the LOI. I present it to the trial court. Here's an LOI that I'll take. And all it did was eliminate those first three site selection criteria. All right. Thank you. Thank you. And please accord Jay McCarrahan for Fred Martin Motors in 2-1-1-9. Were we hearing the Chrysler before then or not? Well, I understood we were doing. I understood we were going to do 1-8 and 1-7 and 1-8 together. That was the intent. All right. I'm sorry. Excuse me. No problem. It's a little confusing. We did the best we could. I hope it was okay, the best we could, to have each side have the same amount of time and have an illogical progression. But to be honest, I couldn't figure out a way that perfectly did it, so I tried the best I could. Actually, I think it makes sense. My name is Hugh Gottschalk. I represent Chrysler Group in all three appeals. As I understand the court's structure, I'll be arguing now. I will not be arguing in the 1-9 case, which primarily focuses on constitutionality. Which you didn't address first. We do not take a position on constitutionality. We have a constitutional avoidance argument on reinstatement, but we haven't taken a position on the pure constitutionality. I will address the four issues before you in which Chrysler does take a position. One is reinstatement. The second is preemption. The third is customary and usual, the issue that was just questioned. And the fourth is the exclusion of certain settlement agreements by Judge Cox with respect to his consideration of the customary and usual issue. I want to start out by answering a question that came up in the appellant's argument about the relationship between the reinstatement and the preemption argument. They are similar conceptually because they reflect the dealer's desire to get their old dealership back on the old terms. One does it by saying the statutory interpretation allows them to be reinstated, as the quality district court called it, status quo anti, reinstated on the same terms. If that happens, they get their dealership back and they don't have to go through the customary and usual LOI, et cetera. The second argument is preemption, which isn't really based on interpretation of the remedy under the statute. It just says as a matter of federal preemption law, there's no state protest process, so we get right to the dealership. So they're different analytically, but they're trying to get to the same goals. I'm sorry. I was just going to opine that I hope you'll reserve time for the second of those. I'm going to do a reinstatement. I'm not contending at all on the first one. I will do exactly that. That was my intent. Reinstatement. Wait a minute. I do, but I'll let you unfold your argument and then we'll... All the courts that address the reinstatement argument, including the Second Circuit and the Ninth Circuit of Founders, reinstatement is not what's prescribed. The line of questioning of appellate's counsel, I think, answers the questions perfectly. The arbitrator does, in fact, make a decision whether or not the dealer should be added. Then what happens in subsection E, as Judge Griffin pointed out, is the statute says if the arbitrator's decision is he should be added, then the manufacturer is to give the prevailing dealer a customary and usual LOI, and you go through the customary and usual process. This is my question. So isn't it as simple as saying that the dealers argue that Congress's intent here was that once the arbitrator had made the decision, that the letter of intent then is shorthand for you get your dealership back? That is their argument. That's their argument. Yes. And so that's where we get to the preemption conflict, because if it is shorthand for that and there's state laws that keep that from happening, then you're in conflict. Right. And I think my answer to the question therefore will address both arguments. Clearly that is not the case. A letter of intent in the automotive franchise business is a precursor that requires contractual performance, state protest, and then there's a sales and service agreement at the end of the line. In the prior legislation that Congress considered prior to 747, dealing with the bankruptcies and the dealer concerns, they did just that. They said a dealer should get the sales and service agreement back or should be reinstated at his old terms. The law that was passed, 747, used the term customary and usual LOI, and every court that has looked at it has said that language means what it means. The arbitrator decides whether the dealer's claim is meritorious. Is he going to be added or not added? That's the arbitrator's decision. And then subsection E explains how he will be added, the mechanism, through a customary and usual LOI. Which could mean they don't get added. It could mean that, and I'll jump ahead. Mr. Smith said they just wanted a chance, not an illusion. Well, they do have a chance. It is not an illusion, even with respect to the state protest process. Many dealers won't have a facing dealer to protest. You have to be within all state laws requiring you to be in a geographic area to protest. There may be some dealers who don't have a facing dealer who will protest. There may be other prevailing dealers who have a facing dealer who could protest but doesn't. There may be other dealers who have a facing dealer who protests, but the protest is... I'm on the preemption issue now. Yeah. Okay. So I'll move on to the preemption issue. I thought you were on it already. I am addressing why there's no conflict. Let me talk directly about preemption. The state dealer laws do not frustrate the purpose of 747. I want to cite two quotes from their brief, the Fox Hills brief, that they say the purpose is to be unconditionally added without meddlesome interference from protesting dealers. That's language from their briefs. That's not what the statute says. What the statute says is a prevailing dealer gets a customary and usual LOI. The metaphor I like to use, I think, that explains it is there is a process by which dealers, both prevailing dealers and dealers in the business community at large, apply for a dealership, get an LOI, build the facilities, do whatever the LOI requires, go through the protest process, and get a dealer. It is absolutely clear from the language of 747 that the intent of Congress was to put the prevailing dealers on the train at the LOI stage. And the LOI stage precedes the state protest process. I understand that. It makes sense to me. Here's my concern. I can express it. If there's something about the process which allows them to kick you off the station, off the train, at their will, at the next stop, that looks puzzling. It's got to be, you've got to have some, it would be strange to read that scheme to allow that. I understand.  It does make sense. You've got to have some security that you're going to stay on the train. Not that 100% you're going to stay on, but you've got to have, you can't be on the ejection. There's two ways to get off our metaphorical train. One is the protest process, which, per the questions, is a result of state dealer laws, and I think Congress clearly intended the prevailing dealers to go through that by selecting the remedy of the LOI. Your question now more... Unless that protest process is sort of an automatic ejection. There's certainly no evidence in the record that it is. Okay, go ahead. First of all, we're talking about 50, when you're talking about the meaning of the federal legislation, you're not just talking about Michigan, you're talking about all 50 states and their protest process, and all the states have adopted state legislation to protect the public, to protect the dealers, to regulate their automotive franchising in the way they see fit. Hawaii different than Michigan, different than Mississippi, but they've all adopted some laws, and the position the dealers are taking is that all those states' laws are preempted by 747. And all they have to argue is that these two are. You can preempt something and not preempt something else by the same language. Right, but I don't think they've drawn any distinction as to why their preemption argument would not apply to all states' laws. The particular states here are these dealers, but the concept of preemption… The issue before us is whether these two states agree to preempt. Let me go back to your… Have protest laws in these other states besides Michigan and Nevada been litigated? Typically, these issues have come up in the Second Circuit and the Ninth Circuit in New Mexico generally. This specific issue hasn't. The preemption issue hasn't been discussed. The preemption issue has not been addressed by any prior court. Let me now address the question you asked, Judge Rogers, about whether they can be kicked off the train sort of unilaterally. The answer is the federal statute, 747, requires Chrysler Group or also GM to enter into a customer unusual letter of intent. We give them a customer unusual letter of intent. They sign it. We have a contract. We have a contract that we have to comply with. If the question is could GM or Chrysler breach that contract, I suppose any party to a contract can breach a contract, but to answer your question, if that contract has terms in it which just more or less are illusory or make the contract an illusory contract because it's just easy for one… Normally, in a true one of these, there is a mutual intent to go forward. This is one that's being forced on you. If the one that's being forced on you has a provision that allows you to easily or virtually at will to get out of it, then it would seem to be inconsistent with the scheme. If it's a contract that has teeth, the more teeth that it has, the more it looks like it's in the scheme. Absolutely, Judge Rogers. I completely agree with you, and I believe that's the beauty and the intent of the customer unusual language. Congress did not say prevailing dealers get a contract with this provision and this provision and this provision and this provision. They said manufacturers, if one of these dealers prevail, you have to give them the same LOI, letter of intent, you give to everybody else, and that's the beauty of how it was done. But in order for it practically to be the same, don't we have to watch out for provisions that would be not problematic among people who mutually entered into a contract but would be problematic if they're forced into the contract? I don't think there are any such provisions here. If there were, we could check for that. And let me give you one example. Would it make sense for us to interpret customary and unusual to take into account the fact that this is a required, that you're being required to enter into these LOIs? I think not. I think you're obligated to follow the federal statute, and if you or Judge Cox concludes that per the language of the federal statute, the LOI was customary and unusual, then Chrysler Group is complete. Any dealer has to enter into a letter of intent with the manufacturer to open the dealership, right? Absolutely. This is not particular to these dealers that were taken out of the system. I mean, they have to have a contract between Chrysler and whatever dealer. This is not disputed. Congress is saying that that contract has to be customary and usual, not necessarily reasonable, not necessarily this or that, but just whatever the practice is. It's not the practice of the industry, but the practice of the manufacturer, that he has to treat these people who have gone through arbitration in the equal manner that he treats the other dealers. And whether it's reasonable or illusory or anything else, I don't see as a consideration, as long as it's customary and usual. Those are the words, and there's nothing else in the statute, right? And I think that's my answer to Judge Rogers, that when he hypothesized something that in the context might work out unreasonably or unfairly. They've got to be treated equally with all the other. They have to be treated equally, which is why the second part of my arguments here in a minute will be focusing on, did we give them a customary and usual letter of intent? And that issue, to go back to your question, Judge Rogers, that issue was addressed in all of the other decisions, district court decisions and the Second Circuit and Ninth Circuit opinions about customary and usual. And the district courts, which did the evaluating, have all found that what Chrysler provided was a customary and usual letter of intent. Now, there's nothing in the record to say that those letters of intent are exactly the same as here, so it's not controlling in any way, but this issue has... I may have dragged you into your final issue. Can you address the pure preemption issue? Certainly. Preemption law is very clear. There is no implied federal preemption unless the federal statute manifestly, clearly and manifestly expresses the purpose to do so. No implied preemption unless it expressly does so? No, no, no. I mean, the context has to be clear and manifest that it is the intent. It's not express preemption is express preemption. Implied preemption, to find implied preemption, this court has to be convinced that the intent to do so was clear and manifest from the statute, notwithstanding that there's not expressed preemption clause. The two theories usually or the two modes are usually field preemption and conflict preemption? Yes, and the parties agree this is conflict preemption. I wasn't clear from the arguments, but I think the briefs are clear. We're not talking about field preemption. We're talking about conflict preemption. The two cases they cite, and I think I can put the pure preemption issue to rest hopefully quickly. Arizona versus the United States involved immigration. Arizona adopting a statute that infringed on the long history of immigration regulation by the federal government. Hillman v. Moretta involved a state law relating to probate and whether the wife or ex-wife of a federal employee would get life insurance benefits. Another case where there had been a long history of federal regulation that a state law impinged upon, and the finding of the Supreme Court in both cases was that is preempted because the federal government has had a long history of regulating the area we're talking about, immigration or federal employee benefits. Here the situation is exactly the opposite. The states have for decades, 75 years, regulated automotive franchising as a matter of state law. The federal government has never weighed into it. You're doing pure preemption. Pure preemption. They've never done it until this statute, until 7-4. That's right. Okay, they did get involved. They did weigh into it. They obviously had a lot of competing interests come to Congress because they had a lot of versions of these bills. One passed by the House. The other one didn't pass by the Senate. They've got everybody complaining and arguing what interests ought to be considered, and they finally come up with a comprehensive statute that does not include the Michigan protest provisions, which I assume that Michigan dealers wanted in there. I'm sorry, I'm not following that last question. Well, I'm assuming the Michigan dealers were involved in lobbying Congress as to the form of 747. Not in the record, but I assume. Well, I mean, everybody else was. Yes. And they have lobbyists in Washington like other organizations, and they didn't get their interest in the federal statute to say, well, it still exists even though they lost. But the issue is not whether 747 does what it says it does, namely set up arbitrations and do all the things that it says it does. The question is, does it go further and preempt state dealer laws even though it doesn't say that? It sets forth all the interests that must be considered by the arbitrator to have a decision that the dealer should at least get back on the train for the network, and what it does not include is some of the interests that Michigan thought were important, but Congress doesn't obviously think that they're important. That's all. I see a conflict there. And to go back to this metaphor, what Congress intended to do by the express language was put the prevailing dealers back on the train at a station that was before the state protest laws. They easily could have accomplished avoiding the state protest laws by either saying federal statute exempts protest laws. These dealers, they could say that. Or as a matter of implied preemption, they could have said the dealer gets a sales and service agreement. What if they had said, which is contrary to fact hypothetical, what if they had said in the statute, the arbitrator shall consider everything that the local state dealer act would have considered? But instead of saying that, you take out the word state dealer act and you just plug in the words from the state dealer act. Are you with me? Yeah. What if they had said that? Would that have been preemption? I don't think so at all. I think they actually used the words, shall use the same factors that the state dealer act applies. A clear difference, no matter how similar you make the standard of decision, is the protesting dealers were not a party to the arbitrations. Am I, as far as Chrysler, going to speak for Mr. Giardini and say here's what his facing dealer might have an interest? The state protest laws express the state's interest in regulating automotive franchising and give facing dealers a voice in that process. The preemption statute doesn't lift that input. Absolutely not. The preemption question before this court is, is there anything in the federal statute 747 that could lead you to conclude Congress intended to obviate or preempt those state dealer protest procedures? There's nothing expressed. The fact that the remedy called for is before the protest process in the normal process. But the sequence of the statute, the remedy, is after the arbitrator makes, evaluates all these interests and makes the decision that the dealer should get on the train, and the next thing is the letter of intent after that, is that there will be an agreement. Does the statute presuppose another step that then you've got to go back to the state agency as to the protest laws? It seems to me like that would be out of sequence, that's all. To answer your question, Judge Griffin, the statute is silent as the state protest process is one way or the other. But the statute also talks about, in a different section we haven't talked about in terms of who is authorized to file these arbitrations, the statute talks about dealers who are not lawfully terminated under state law, which was the language to basically say they got terminated in the bankruptcy or rejected in the bankruptcy. And so the preparatory language that talks about which dealers qualify reflects a knowledge of this state law protest process, because it says any dealer who lost their dealership other than through a state law process can now arbitrate. My colleague's got another question, but before he asks it, one last thing. The Attorney General has filed a brief defending the constitutionality of the statute, and the Michigan Attorney General routinely does the same when Michigan statutes are constitutionally challenged. However, I've also seen the Attorney General intervene in cases where the Michigan law or the interests of the state of Michigan are challenged, and the preemption argument would challenge an interest of the state of Michigan. Has the Attorney General taken any position in this case or evolved? Is it significant that he hasn't? I'm aware of none. Is it significant that the Attorney General has stayed on the sidelines here when the preemption issue would knock out the Michigan statute? I draw no conclusions one way or the other about the Attorney General's agenda. I think we are interpreting language in the federal statute in the intent of Congress, and whether the Attorney General... Preemption would affect the interests of the state of Michigan, and my experience with the current Attorney General is that it's been a very I thought it was odd that they weren't here. The short answer is I don't know what to make of it. And you don't put any significance on it at all. I put no significance on it at all. I want to just briefly focus on this conflict issue. I think everybody agrees that the dealers are on the train. The question is, what's the destination? If the destination's a contract, that's, I think, your argument. But if the destination here is a dealership, then that's where the conflict arises, but maybe only in a very, very narrow way to the extent that the state laws just preclude that coming to fruition at the end. Is that fair? I'm sorry. I didn't understand. If the destination is simply a contract, then there is no conflict with the state law because that process can unfold. They got the contract. They don't necessarily get a dealership. But if it is, in fact, a dealership, if that's what the statute means, and that's really where we... This is Judge Griffin's excellent point at the very beginning about what the remedy here is. If the remedy is a dealership, then it seems like Michigan's law could unfold here, but only in the instance in which it actually then precludes a dealership from happening. That's the conflict, and that's what's preempted. Right. But our fundamental point is I do not think the intent to unconditionally put a prevailing dealer into a dealership is shown from the language of 747. What's shown from 747 is a conditional, an opportunity to become a dealer, a chance to become a dealer. And if you read that intent into 747, then there's no conflict at all. One quick point. I was heartened to hear opposing counsel say they agree the customer unusual issues are clearly erroneous standard factual findings. I had a big long commentary on that, but I agree. I think it is clearly erroneous. It was Judge Cox's factual findings on all the evidence he listened to we ask you to affirm. Thank you. You have rebuttal. Is that correct? Are you sharing the rebuttal? I mean, each of you has a short rebuttal? Okay, fine. To that last point, I don't think the statute does envision a conditional trip to the contract. Again, if you look at subsection E, the sentence after talks about the letter of intent. The statute says, after executing the sales and service agreement and successfully completing the prerequisite set forth therein. There's no contemplation that between the letter of intent and the sales and service agreement that there's going to be any lengthy state judicial proceeding, state administrative proceeding, anything of the sort. The statute just talks about, frankly, the same thing Mr. Tangeman testified to. Absolutely, the LOI leads to a sales and service agreement. Could I ask what your specific problems are with the LOIs? I mean, you have a problem with what they're compared to, but do you have particular provisions that are... My client's problem... ...that you object to or you just want them to look like something else? No, my clients can comply with the LOIs, Your Honor. Well, yours can. It's just your... That's correct. All right. Really, it's the issue of allowing the state law protest rights. All right. We have cited Hillman, and I think the significance of Hillman is it really lays out the analysis for the court, the implied preemption analysis. The first step is to identify the nature of the federal interest, and I think it's important to think about what Congress was dealing with at the time. The automakers had made tremendous cuts to their dealer bases. I think everyone agreed that they needed to, but there was a feeling, and Congress embodied that in the act, that they had gone too far. So the federal interest was to counterbalance this cut because it was having dramatic national economic impacts, nationwide impacts, and that's in the record, 200,000 job losses from these dealer terminations. So that's the federal interest. That's the first step to be identified. And then the next step is to say, what effect does the state law have on that purpose? And this is where I think the remedy issue is crucial to the preemption analysis, and that's why they're intertwined, because if the remedy is that the dealer shall be added to the network, or shall be added to the dealer network, then necessarily letting Michigan-Nevada dealer franchise laws intervene upsets that schema. The problem with that for you is if we disagree with you on that, you lose your preemption argument. I would say, Judge Rogers, that as I mentioned at the end of my presentation, even if the LOI is the remedy, I think there's a preemption problem, but if the remedy is being added to the dealer network, it's squarely. It's a much bigger problem. Yes. I got you. Unless there are further questions. No, thank you. Thank you. Maloney, right? Yes. Yes, Judge. At the trial court level, the trial judge created a universe of LOIs of 122. It was uncontroverted in the factual record that 64 out of the 122 had no site control option in the language, which is what I'm asking you to do for me. So 52.5% of the LOIs presented to the trial court factually had no site control, paragraphs one through three, because they were site-specific. I arbitrated a site. My arbitration award cited to the site. It said I should go back to my dormant site. My client kept ownership of that site. My client owns that site today and wants to go back to that site. 52.5%. I understand. How much of your concern would be alleviated by eliminating that one provision? On the LOI? That's what I need. That's all I need. All you need is the site provision removed, basically. Yes, sir. Well, most of the ones that did not have the site approval were world dealerships. Correct, but they're in the universe that the judge created. Okay, but Chrysler makes the argument that urban dealerships and world dealerships traditionally have been treated differently by the manufacturer, and this is just consistent with past practice. I mean, isn't that true? Judge Griffin, yes, and that goes to my template argument. You have to remember, we're looking at a universe of LOIs from new Chrysler. They're just born, so the LOI universe isn't that big. Sixteen times they gave an LOI that was site-specific. In my argument, you add in the 50 because the judge, the trial court, created the 50 to be part of the 122 universe, and you asked me earlier am I willing to live with this fact finding, and that was part of this fact finding that the universe was 122, which means 52.5% did not have site selection controlled by Chrysler, and that's what I want. One other issue is conflict preemption. Anytime there's an obstacle to the accomplishment of the federal purpose, you know, conflict preemption, I would urge you, I urge you to read in my brief the comparison of the items, of what had to be arbitrated under the federal law and what gets re-arbitrated in a circuit court case under this day law. I wonder how you respond. He says the big difference is the inability of the objecting dealership to participate in the first arbitration. They came as witnesses. You have to remember, they took my… Talking about saying a state statute is a nullity, I'm a little reluctant to do that based on the fact that someone was a witness. Here's what's being suggested. They came as witnesses in arbitration? They were allowed to testify. Not in the bench trial. The bench trial there was one witness, right? You're talking about the arbitration? Yes. Okay, but the issues litigated in the arbitration don't include the Michigan protest law issue about the interests of the existing dealers, right? Well… Isn't that correct? I'd say you're wrong. Oh, it does? Let's go through some examples. One of the things you arbitrate under the Act is the permanency of the investment. Okay, that was arbitrated with my client. When I go, I mean, I'm sorry, under the state law, we would have to face a challenge about the permanency of our investment. When I arbitrated in the federal case, one of the issues was the covered dealership's current economic viability and the length of experience. Well, my client had tremendous money and tremendous experience. That's the permanency of the investment. It's the same issue going to be arbitrated in a circuit court case, and I can go through all of them. How about the issue, I'm guessing, of how much harm it does to the, what do they call it, facing dealer or whatever the word is. Hey, under the State Dealer Act, one of the criteria at the circuit court level would be the effect on retail new motor vehicle business and the consuming public in the relevant market area. Under the federal arbitration, we had to prove and arbitrate the demographic and geographic characteristics of the covered dealership's market territory. It's the same issue. I urge you to read it. It's a parallel issue, so why would I go and prevail all the way through this showing at an expensive arbitration process to face the same issues? And what they're suggesting is maybe we should have faced those issues at the arbitration. Well, then why would you have the federal law? And finally, and I want to... The federal law, I mean, just so it's not too glibly stated, you have the federal law which gets you into the state process, which otherwise without the federal law, you never would have been negotiated with. Isn't that correct? Judge, and I don't want to be flippant, but my client's here and I want to say this. My client's here and I really want to say this. To say for Chrysler or anyone to say that all she won was an opportunity, you have the same opportunity. I have the same opportunity. If I can show a certain amount of criteria, Judge, you and I could get a letter of intent for that market area. Why would she go... It doesn't have to give me one, but they're forced by federal law to give you that opportunity. Chrysler could have said, absent 747, go away, Livonia, we're tired of you, right? But the law kept them from doing that, said instead they have to give you a contract which will get you up to step three or step four. The law was remedial. The law didn't prevent them from terminating me. The law allowed me to get back in. Okay. Thank you, and I appreciate the time. Thank you. Okay, that's the first two cases. Is that correct? We're ready to go to the third case, and in that case, the lawyer for Fred Martin is going to have 10 minutes subject to rebuttal, and then we'll hear from Spitzer and the government. Thank you very much, Your Honor. What's your position? Well, simply put, Your Honor, we don't think anybody should have ever been here. We believe 747 from its inception was unconstitutional as it alters the effect of the final court orders of the bankruptcy court. Judge Cox and his decision, which denied that portion of Fred Martin's motion for summary judgment, never addressed the underlying constitutional question. He did reach a constitutional question when in footnote five, he addressed an issue that was raised by what was identified as some rejected dealers who were asking the question, we should be reinstated immediately with no conditions. Chrysler suggested that if that's the way the court interpreted 747, that could raise a constitutional issue. Judge Cox said, I don't interpret the statute the way the rejected dealers want me to, therefore, that issue is resolved. You only have a limited amount of time. We don't need to worry too much about what the district court addressed or not, do we? Well, I just wanted to make it clear that the underlying question that we raised was never addressed. So we're back to now the question of, is 747 unconstitutional? We start with a very basic premise under the separation of powers document. Once the court's orders are final, Congress cannot take a step that has the effect of altering those final court orders. That's correct. And here, what we have with this scheme is not a prospective act. This is all looking back. If you look at the congressional history, as limited as it is, one of the main advocates said that I'm proud to lead the fight to reverse those short-sighted decisions. When AAA then reported to Congress, it talked about the appeals of the manufacturer's decisions. All of this is looking backwards. So we have not only the problem of the thrust of 747, we have the corollary constitutional problem of placing this review in Congress's own hand-picked tribunal outside the Article III hierarchy. That's a different issue from the Ploutt issue, isn't it? I'm sorry? That's a different issue from the Ploutt issue, isn't it? It is a different issue from the Ploutt issue. Which is your stronger issue? I'm sorry? Which of those two issues is your stronger issue? Well, I believe the stronger issue is the fact that this is a backward-looking statute. This was designed to... Like the one in Ploutt. Yes, this is designed to alter... Wasn't Ploutt a little different? Can you review that for me? It seemed to me like Ploutt was directly undoing a judgment of the court. That's correct. Here, they're taking some of the effects of the court judgment and prospectively saying you have to enter into a contract if you win an arbitration. Yes. It has a look of prospectivity. It has a look of prospectivity. More than what was going on in Ploutt. Yes, I would agree with that. We would have to expand Ploutt in order to rule for you on this, your stronger argument. I think that's correct, Your Honor. Your analysis, I think, is correct. But here, I think, is the underlying problem. You know, this isn't the reopening of a final court order and basically telling the court to change its order. This is a bit different twist on that. It doesn't even undo the termination of the dealerships that otherwise would have not been terminated without bankruptcy proceeding, right? Not directly. But what it does is it creates... You can say it has an effect, which is similar if they had done that, but that's a different thing, right? But I think going back to the question that you just raised in the preceding rebuttal, without 747, none of this would ever have happened. That's what happens when you pass laws. But... Things change. And if this were only a prospective act... Because U.S. Attorney has suggested that this is like any other statute that Congress would pass to create some prospective right that someone can gain. The problem... Sure, that's the case. But on the other hand, it seems awfully different from Ploutt. I mean, we don't... The Attorney General doesn't have to prove in order to be right that this is exactly like any other law. We need to show that it's similar enough to Ploutt to throw it out, right? I believe that's correct. But given that standard, the fact that this is designed to have that altering effect... In other words, what 747 does is to place this review in the American Arbitration Association with standards that now are different than the business judgment rule of the bankruptcy court, and you have no right of appeal through the Article III hierarchy. So... Given your question with respect to that, it is our opinion that with what Congress did and the fact that it is designed to alter the effect, it's basically saying we don't like the decisions that the bankruptcy court made. That's what Congress has essentially said. So what Congress says, we'll create new standards that were not used in the bankruptcy court, we'll place it in a different venue than the bankruptcy court, and we're not going to allow appeal of that process. So... I don't believe that Congress can basically end-run the bankruptcy court orders by the creation of 747. This is not a situation where Chrysler, as suggested by the Spitzer brief, was on a quest with Spitzer to create a new dealership. Chrysler resisted all of this. I think as Judge Griffin has pointed out on a number of occasions, this is not a situation where Chrysler got hand-in-hand with these arbitrating dealers and said, let's go out and create new franchises. Chrysler resisted all of that. This was something, as was pointed out, that they were forced to do. And but for 747... ...forced corporations to do stuff all the time. But they... In response to that, without knowing exactly all of this, I would say this. They don't necessarily force people to get together to do something that the one doesn't want to do. They can force someone to meet certain criteria to do something. But to say, you must get together with this person to do this result, I think is an entirely different story. And that's what 747 has done. It said, you must get together with them if the arbitrating dealer is successful in that arbitration. And all we're saying is that with the way the statute was written and with the changing of the standards, that these arbitrations should never have taken place in the beginning. And that we would not have reached the preemption issue because preemption, if decided, wouldn't moot the underlying constitutional question, but a decision that the statute is unconstitutional moots the entire preemption issue. And therefore, we would ask the court would reverse the judgment of Judge Cox and then vacate the LOI that Chrysler was forced to give. Thank you, counsel. Thank you, Eric. Thank you, Judge Rogers, and may it please the court. The United States intervened in this case to defend the constitutionality of Section 747. As counsel for Fred Martin admitted, for the court to hold that the statute is unconstitutional, the court would have to expand the holding in Ploutt. Section 747, as counsel admitted, does not reopen the bankruptcy court's 2009 judgments, and it does not undo the terminations of the contracts between old Chrysler and the dealerships. Ploutt was a very narrow ruling. The Supreme Court held that Congress cannot mandate the reopening of final judgments in cases for money damages. Section 747 does not do that. It is a prospective statute. It contemplates new contracts at a later period in time based in part on new facts. It raises no constitutional concerns under Ploutt. It also, as counsel admitted, does not reopen the bankruptcy court's 2009 judgments, one of those was to approve the transfer of the assets to new Chrysler, and the other was to approve the termination of the contracts. It does not undo either of those judgments. In addition to the Ploutt issue, Chrysler raised a constitutional avoidance issue that we've addressed in our briefs regarding the bankruptcy clause. Just briefly, we don't think that Section 747 is a law on the subject of bankruptcy, even if the court thought that it was. The law is uniform, so it wouldn't defend that provision. We also don't think that the court even needs to reach Chrysler's argument regarding avoidance of the bankruptcy clause issue because we agree that the plain text of the statute makes clear that the only remedy Section 747 provides is a customary and usual letter of intent. He also raises an argument today about the problem of having a federal law issue that would depend on a forced arbitration, not an Article III court, not appealable. I guess it's a related issue, but it's a distinct issue in my mind. Do you want to address that? Sure, Your Honor. My understanding is that Fred Martin has raised that issue, similar to the Ploutt issue, that Section 747 is allowing a non-Article III court to review the decision, review a final judgment, and that's simply not the case because Section 747 contemplates new contracts and mandates only prospective relief. It does not allow for any review of the 2009 bankruptcy court. I guess the reason I see them as distinct is you could raise a Ploutt issue if this was just a new right that was enforceable in district court. Before an Article III judge, you could still raise the Ploutt issue and win or lose. He seems to be making an argument that's distinct from the Ploutt issue, which is that federal rights shouldn't be decided in an arbitration. The federal law shouldn't say people like X have to pay people like Y if they lose the following arbitration, which is not appealable. That's sending something into a non-court to resolve federal law issues. Is he not making an argument like that? It sounded like it.  That he was making that argument? He's making a separate argument. I guess I thought maybe it was related to the Habron's case in which the judgment of an arbitration... It was just sort of color to his Ploutt argument is how he took it. Is it okay for Congress to do that, to have federal rights depend on arbitration that's not reviewable in court, just sort of send it to a private body to resolve? The statute gives a terminated dealer an opportunity to seek through arbitration certain rights, and I don't think that presents any issues. I guess I'm not aware of what constitutional provision in particular he's trying to raise that under. Well, if you look at the old non-delegation cases, some of them turn on the extent to which federal rights are resolved by bodies that aren't federal. But if you don't take it that he's making that argument, that's fine. Thank you, Your Honor. Thank you. May it please the court. I'm Anthony Giardini. I'm here on behalf of Spitzer Auto World LLC, and I think I'd like to pick up where Mr. McCurhan left off, and that is this comment about how Chrysler was forced into these arbitrations. I would remind the court that this was an unusual circumstance that brought about all that we had. Two of the largest bankruptcies in the history of this country occurred. Hundreds of thousands of people were about to lose their jobs, including people who worked in these dealerships. New Chrysler didn't exist at the time of the bankruptcy. It was just formed at the time of the bankruptcy. And New Chrysler took money from the United States government, taxpayer money. And when you take taxpayer money, sometimes you take some of the strings that are attached to it. What Congress decided after seeing how all of this unfolded, and their intent obviously was to save jobs, not to cost jobs, they decided that there were a lot of people who were going to lose their jobs as a result of these rejected dealers being terminated. And they decided that since they're loaning money to Chrysler to create jobs, New Chrysler to create jobs, that maybe we ought to take a look at that again. And that goes to the issue of arbitration. They have a loan agreement essentially with Chrysler. They're saying, we're going to give you money, and we want you to take that money and build factories and keep the factories moving. And we also want you to take a look at your dealer network, and we want you to give an opportunity to a certain group of people, just a very narrow group of people, and give them an opportunity to demonstrate to you why they should be a part of your dealer network. That's what Congress did with 747. And I think it was appropriate, that's my view, because I was very involved in the lobbying of 747 and was there when a lot of these compromises were made. So I understand your position. You don't have a problem with saying the remedy is the LOI. I am conflicted, Your Honor, but since we didn't appeal Judge Cox's decision, that is our official position. Believe me, my heart is with Livonia and Fox Hills, but I'm sitting with Chrysler. Well, but your client is willing to deal with just having an LOI as long as the LOI is. It is. We feel we have such a strong position with respect to that LOI that we just want to get on with it. We've been stayed now for three years from even dealing with the protests that Fred Martin filed. I can't move forward until this matter is decided. And so we just took the position, look, we'll deal with the protest laws of Ohio. Our laws are the same as Michigan. We're going to be arbitrating basically the same criteria in the protest. We're going to be dealing with the same criteria. I guess my feeling is we won once, we'll win twice. And that's really why when Mr. McCurran says, I don't understand why any of us are here. Honestly, I don't understand why Fred Martin's here because Fred Martin didn't lose anything. It had a Chrysler Dodge Jeep dealership before the bankruptcy. It had one after the bankruptcy. It had one before 747 was passed. And it has one after 747 was passed. And even if I win my protest, it'll still have its dealership. It just doesn't want your competition. It just doesn't want, which it had for 30 years prior to the Chrysler bankruptcy, which is another, it's not really relevant to this case. It's not like he doesn't have standing. Your Honor, I don't think he has standing at all because his, now I'll qualify that. If this court were to determine that Ohio's dealer act was preempted by 747, then I would agree that he had some standing because now he has a financial interest involved and he doesn't have any opportunity to, as a party, deal with it. But he has that opportunity. So if this court decides that Judge Cox was right and that 747 didn't preempt Ohio's law, then we have Ohio law, Your Honor. And since we didn't appeal, that issue isn't really before you. We're dealing with 4517.50 of the Ohio Vice Code in our case. And Fred Martin does not have standing to challenge the constitutionality of this act with Judge Cox's decision, and that's what Judge Cox said. And even if you looked at Fred Martin's pleadings, they clearly indicate that the only reason they're here is because of the possibility that there would be preemption. With that possibility gone with Judge Cox's decision, they were done. They're out of this thing in terms of being harmed in any way. Thank you, Counsel. Thank you, Your Honor. Thank you, Your Honor. I'll try to be fairly brief here. With respect to the U.S. Attorney's argument, we have a fundamental disagreement about the effect of 747. The U.S. Attorney is saying that there isn't a reopening of the orders. There is no reopening. There is an altering of the effect of the orders because but for 747, the bankruptcy orders would be in effect. None of this would have happened. As I think it was Judge Griffin said, there would be nothing to go forward with. The bankruptcy order would be ended, and that would be the sum and substance of this case. Mr. Giardini just suggested that Fred Martin never had standing before the district court. I might note that the way that came up was no one ever raised it, and there was no motion to dismiss, no motion for summary judgment, no anything. It came up in the United States response to a nondispositive motion Fred Martin filed. That was the first time it was raised. Judge Cox then did address it in deciding that motion, but if you go back and look at the concepts of Article III standing, you have competitor standing that deals with the actual injury. We don't think there's any question there's actual injury because we've had to go through this process to date. We'll have to go through any protest process in the future, and if you look at competitor standing, I don't think there's any question that we meet that criteria. Causation. The action has to be traceable to the challenged action. Again, Section 747, the revival of Spitzer, selling like-line vehicles in overlapping market, there's a causation. Redressability, we'd meet that because the 747 is unconstitutional. Then this set of actions would never have occurred, and this matter would not be where it is now. So once again, I would just ask that the court reverse Judge Cox's decision to Fred Martin and remand for an order that the LOI be vacated. Thank you, counsel. Thank you. You've all presented an interesting case, and we appreciate it. The case will be submitted. We'll do our best. I guess there's one case that's submitted on the briefs, and you can go ahead and dismiss the court.